No. 25,430.

Edgar F. Olson, *Plaintiff*, v. The Western Automobile Insurance Company et al., *Defendants.*

### SYLLABUS BY THE COURT.

Mandamus—*Mutual Automobile Insurance—Form of Policies Not Approved by Superintendent of Insurance—Policies Canceled by Direction of Superintendent of Insurance and Board of Directors—Cancellation Valid—Demand for Inspection of Company's Records—Writ Denied.* A mutual automobile insurance company of this state issued policies to 3,200 members of an automobile club of Chicago, Ill. Dissensions arose between the company and club managers, which became acute shortly before the annual meeting of the company. The policies discriminated in favor of the holders, both as to coverage and rate, and the form of policy had not been presented to the superintendent of insurance for approval. When the policies were called to his attention, he directed that they be canceled. Pursuant to authority to cancel reserved in the by-laws of the company and in the policies, and in obedience to the direction of the superintendent of insurance, the board of directors ordered the policies to be canceled forthwith. *Held,* the order was conclusive upon the policy holders, and after it was made they did not have sufficient interest in the affairs of the company to entitle them to a peremptory writ of mandamus to compel compliance with their demand for an inspection of the company's records.

Original proceeding in mandamus. Opinion filed January 12, 1924. Writ denied.

*Clad Hamilton, Clay Hamilton, Donald A. Campbell,* all of Topeka, *Dwight S. Bobb,* and *C. W. Armstrong,* both of Chicago, Ill., for the plaintiff.

*John H. Crain, W. P. Dillard, Douglas Hudson,* all of Fort Scott, *Robert Stone, George T. McDermott, Robert L. Webb,* and *Beryl Johnson,* all of Topeka, for the defendants.

*C. B. Griffith,* attorney-general, and *John F. Rhodes,* assistant attorney-general, for *William R. Baker,* superintendent of insurance.

The opinion of the court was delivered by

BURCH, J.: The plaintiff, for himself and numerous others similarly situated, prayed for a peremptory writ of mandamus to compel the company, through its officers, to comply with plaintiff's demand for inspection of the books and records of the company. While other information was sought, the primary purpose of the inspection was to secure the names and addresses of all members of the company, for use in a campaign for election of directors at the company's annual meeting, to occur on January 12, 1924.

The company is a mutual association, organized under the provisions of section 40-901 of the Revised Statutes, which reads as follows:

"Mutual associations may be organized under the general law of Kansas relating to corporations for the purpose of transacting the business of indemnifying the owners of automobiles, or other machines or devices used for locomotion, against loss or damage resulting from the ownership, operation or maintenance of such machines or devices. Such associations may issue certificates of membership, or policies, the premium on which may be paid on the assessment, installment, or cash plan."

Plaintiff is president of the Illinois Automobile Club of Chicago, Ill., an association which, in connection with other activities, maintains what is known as the Inter-Insurance Exchange, which supplies indemnity insurance other than liability insurance to its members. The exchange is managed by Hugo Meyer. In 1920, the company affected an arrangement with Meyer for writing liability insurance for members of the club. Pursuant to the arrangement, approximately 3,200 members of the cub, including plaintiff, became policy holders of the company. These policies were more favorable to the insured, both as to coverage and rate, than policies issued by the company to its members generally. Dissensions arose between the officers of the company and Meyer, which negotiations failed to compose. The nature and details of the controversy are not now important. On November 12, the company instructed its agent at Chicago not to accept after December 1, 1923, any more business on preferential terms. Afterwards the preferential character of the automobile club business was brought to the attention of the superintendent of insurance by officers of the company. On November 16, the superintendent of insurance issued to the company the following direction, applying generally to the company's business, and intended to apply specifically to the automobile club's business:

"This department has been advised that for the last three years your company has issued policies, through a certain agency in Chicago, which provide greater coverage than policies issued in this state, and that the rate charged for these special contracts is less than that charged in this state, taking into consideration the difference in hazard.

"You are directed to discontinue the issuance of these policies and to discontinue the policy of discrimination in rates immediately, and you will cancel immediately all policies heretofore issued which are discriminatory either in coverage or premium."

The direction was received by the company on November 19, and was considered in connection with the entire Chicago situation, at a meeting of the board of directors held on the 21st. The conclusion was reached that it was for the best interest of the company and its policyholders generally to cancel immediately all policies issued and in force wherein discriminations had been shown either as to rates or form of coverage, and a resolution was adopted instructing officers of the company to cancel such policies at once. The company immediately began cancellation of policies of automobile club members, on the terms provided for in the policies, and proceeded with the work of effecting cancellations until temporarily restrained by order of this court on December 7. The cause was heard on December 12, and on December 13 the writ was denied and the restraining order was set aside, for reasons now to be stated.

Plaintiff predicated his right to relief on membership in the association, and prayed for relief in respect to a privilege of membership. He pleaded the following by-law of the company relating to membership:

"Section 1. All persons, firms or corporations to whom a certificate or policy has been issued by this company granting indemnity against loss, damage or expense, arising from claims or demands on account of accidental injury inflicted upon either the person or property of another, through the ownership, use and maintenance of an automobile, shall be considered members of this company as long as such certificate or policy is continued in force. Membership in the company terminates with the termination, either by expiration or cancellation, of the certificate or policy upon which it is based; and the termination of such certificate or policy shall operate as a surrender and forfeiture to the company of all rights or equities possessed by such member in or to any and all funds, property or accumulations of the company."

Section 2 of the by-laws reads as follows:

"Any member may withdraw from this company at any time by notifying its secretary of his desire to do so in writing."

The by-laws also contain the following provision, consonant with

the statute conferring on directors general management of corporate affairs, and necessarily binding on plaintiff:

"Section 6. The board of directors shall supervise and fully control the business of the company as well as its property and assets; . . ."

The policies issued to plaintiff and his associates, whereby they became members of the company, contained the following provision:

"This policy shall be cancelled at any time at the request of the assured; or by the company by giving five days' written notice of such cancellation. If this policy be cancelled by the assured, the premium having been actually paid, the unearned portion shall be returned on surrender of the policy, the company retaining the customary short rate. If this policy be cancelled by the company by giving notice, it shall retain only the pro rata premium. Notice of cancellation mailed to the address of the assured stated in the policy shall be sufficient notice, and the check of the company, or its agent, when similarly mailed shall be sufficient tender of any unearned premium."

The result is, plaintiff contracted that continuation of his membership was dependent on the will of the board of directors. That will extends to the subjects of going into new territory, of withdrawing from a state or city, of making arrangements for the business of groups of persons, and of discontinuing relations with such groups. It is advantageous to an insurance company such as the defendant, doing a large business in a number of states, to effect connections with insurance agencies and exchanges. The fact that the company is not able to maintain harmonious relations with the manager of an exchange such as that of the automobile club, may be a sufficient reason, if any reason need be assigned, for cancelling memberships of the entire group represented by the manager. The problem is one of business policy which the board of directors must solve, and it may put into effect a resolution to cancel at such time as may seem to it most beneficial to the company.

In this instance, the critical stage in the relations between the company and the automobile club was reached while Meyer still had time to prepare for contest in the annual meeting. Whether under the unconditional terms of the by-laws and policies of the company, policies could be cancelled for purely tactical reasons, is a subject which need not be considered. The fact that the policies issued to the automobile club members were unfair and, as will presently appear, were unlawful, made every one of them subject to summary cancellation, and the order of cancellation was conclusive, even although the directors may not have been unmindful of

the fact that it would exclude a disturbing element from the annual meeting.

Plaintiff is exercised lest the directors should go on canceling memberships until no members are left but the directors, and that the directors should then appropriate to themselves all the net assets of the company. Plaintiff had no property in any portion of the company's surplus. He would have had if the company had been in process of liquidation, but it was not. He would have had if a distribution of surplus had been ordered. Under the law and under the by-laws of the company, return to members of such portion of surplus funds as the finances of the company will warrant, is a subject for determination by the board of directors. The board of directors has not acted and, although Meyer proposed a dividend, there is nothing to indicate the directors have abused their discretion. Plaintiff took membership on condition that, if his policy were canceled, any right he might have to accumulated funds was surrendered. His policy has been canceled. The evidence shows the company is expanding instead of contracting its business, and if it should ever be discovered a wicked design of the directors such as agitates plaintiff is in process of actual execution, it will not affect him unless he is then a member.

The statute under which the corporation was organized reads as follows:

"Before beginning the transaction of business, such association shall submit its charter, by-laws, and form of membership certificate, or policy, to the superintendent of insurance, who, if he approves the same, shall issue his written certificate authorizing such association to transact business, upon the payment of a fee of twenty-five dollars.

"The superintendent of insurance shall have and exercise the same control over such mutual associations as he now has over other mutual insurance associations doing business in this state." (R. S. 40-902, 40-904.)

The statute would be a futile thing if a company could secure a certificate to do business under one set of by-laws and form of policy, and the next day substitute others. Therefore, doing business by use of a policy not approved by the superintendent of insurance, is doing business without authority, and contrary to law. The superintendent of insurance had not approved the form of policy issued to members of the automobile club, and his direction to cancel had back of it the common sanction of revocation of the company's certificate of authority to transact business.

Plaintiff says there was no notice or hearing preceding the order. The superintendent of insurance was not dealing with policyholders. He was dealing with a corporation assuming to do a certain kind of business without lawful authority, and the order was made on an admission of the corporation's officers.

Because the policies issued to members of the automobile club were issued without authority of law, were condemned and directed to be canceled by the superintendent of insurance, and were ordered canceled forthwith by the board of directors of the company, plaintiff and those whom he represents did not have, at the time of the hearing, sufficient interest in the affairs of the company to entitle them to an inspection of its records.